UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSHUA MARSHALL,

                           Plaintiff,                            **10 CV 2714 (JBW) (VVP)**

          -against-

THE CITY OF NEW YORK, P.O. SALIM RANDALL,
Shield No. 15331, Individually and in His Official Capacity,
P.O. MICHAEL BURBRIDGE, Shield No. 15488, Individually
and in His Official Capacity and P.O.'s "JOHN DOE" #1-10,
Individually and in their Official Capacity (the name John Doe
being fictitious, as the true namesare presently unknown),

                             Defendants.
------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD  FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FALSE ARREST
        CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.      The Parties Have Given Markedly Different Testimony About The Events Which
                Led Up To Plaintiff's Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS
        PROSECUTION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.      There Is A Material Factual Dispute As To Whether Or Not Defendants Testified
                Falsely Before The Grand Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Defendants' Claim That Plaintiff's Testimony Is Mere "Speculation" Is Utterly
                Specious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.      Defendants' Claim That Plaintiff Must Provide "Independent Evidence"  To
                Support His Claims Is Wrong As A Matter of Law . . . . . . . . . . . . . . . . . . . . . 14

        D.      Defendants' False Statements to the District Attorney's Office Provide A Separate
                Basis For Plaintiff's  Malicious Prosecution Claim . . . . . . . . . . . . . . . . . . . . . 17

        E.      There is Additional Evidence of  "Bad Faith"  In The Record Which Is Sufficient
                To Defeat Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FAIR TRIAL
        CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      Forwarding False Evidence To Prosecutors Violates The Accused's Right To A
                Fair Trial And Is Independently Actionable Under 42 U.S.C. § 1983 . . . . . . . . 20

        B.      The Fair Trial Claim is Not Duplicative of the Malicious Prosecution Claim . . . 21

C.      There Is A Material  Factual Dispute As To Whether Or Not Defendants  Fabricated Evidence Against Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS ABUSE OF PROCESS CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

      A.      Defendants Misstate the Law Regarding "Collateral Objective" . . . . . . . . . . . . 23

      B.      The Factual Dispute Over Fabricated Evidence Precludes Summary Judgment .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.     THE QUALIFIED IMMUNITY DEFENSE IS NOT AVAILABLE TO DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      A.      Disputed Issues of Fact Preclude Summary Judgment on Qualified Immunity . . 25

      B.      The Qualified Immunity Defense is not Available For Officers Who Knowingly Violate the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Table of Authorities</u>                                                      <u>Page</u>

<u>Anderson v. Liberty Lobby, Inc.</u>,477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Baez v. Jet Blue Airways</u>, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426
      (E.D.N.Y. July 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Babi-Ali v. City of New York</u>, 979 F. Supp. 268 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . 26

<u>Brady v. Town of Colchester</u>, 363 F.2d 205 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Brandon v. City of New York</u>,  705 F. Supp. 2d 261 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . 21

<u>Brawer v. Carter</u>, 937 F. Supp. 1071 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

<u>Brome v. City of New York</u>, No. 02 Civ 7184, 2004 U.S. Dist. LEXIS 3943
      (S.D.N.Y. Mar. 15, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29 (2d  Cir. 1994) . . . . . . . . . . . . . . . . . . . . 8

<u>Chimurenga v. City of New York</u>, 45 F. Supp. 2d 337 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . 17, 18

<u>Curry v. City of Syracuse</u>, 316 F.23d 324 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Granito v. Tiska</u>, 181 F. Supp 2d. 106 (N.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Henry v. City of New York</u>, No.02 Civ.4824, 2003 U.S.  Dist. LEXIS 15699
      (S.D.N.Y. September 5, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24, 28

<u>Hernandez v. City of New York</u>, No. 01 Civ 4376, 2003 U.S Dist. LEXIS 21146
      (S.D.N.Y. Nov. 18, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

<u>Howard v. Schoberle</u>, 907 F. Supp. 671 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Fischl v. Armitage</u>, 128 F.3d 50 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Funnye v. City of New York</u>, No. 98 Civ 7731, 2001 U.S. Dist. LEXIS 3337
      (S.D.N.Y. March 27, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

<u>Jocks  v. Tavernier</u>, 316 F.3d 128 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

<u>Jovanovic v. City New York</u>, 04 Civ.8437, 2006 U.S.  Dist. LEXIS 59165
      (S.D.N.Y. Aug. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iii

Lee v. City of New York, No. 00 Civ. 3181 2002 U.S. Dist. Lexis 13696
(E.D.N.Y. July 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lierando-Phipps v. City of New York, 390 F. Supp. 372 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . 18

Manganiello v. Agostini, No. 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181
(S.D.N.Y. Dec. 9, 2008 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

McClellan v. Smith, 2006 U.S. App. Lexis 4531 (2d Cir. Feb. 24, 2006) . . . . . . . . . . . 19, 20, 25

Mickle v. Morin, 297 F.3d 114 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Montes v. King No. 00 Civ 4707, 2002 U.S. Dist. LEXIS 14464
(S.D.N.Y. August 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Nibbs v. City of New York, No. Civ. 3799, 2011 U.S. Dist. LEXIS 87213
(S.D.N.Y. Aug. 4, 2011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Oliveira v. Mayer, 23 F.3d 642 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Parkin v. Cornell University, 78 N.Y.2d 523 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . 20, 21, 28

Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577
(E.D.N.Y. Sept. 27, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 18, 22, 24

Rueda v. Kreth, No. 01 Civ. 2819, 2005 U.S. Dist. LEXIS 4404
(E.D.N.Y. Feb 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Spencer v. Ellsworth, No. 09 Civ 3773,  2011 U.S. Dist. LEXIS 49984
(S.D.N.Y. May 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Stewart  v. City of New York, No. 06 Civ. 15490, 2008 U.S. Dist. LEXIS 30632
(S.D.N.Y. April 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sutton v. Duguid, No. 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853
(E.D.N.Y. May 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 26

iv

Taylor v. City of New York, 269 F. Supp 2d 68 (E.D.N.Y 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Taylor v. City of New York, 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429
  (S.D.N.Y. June 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 16, 20

United States v. Rem, 38 F.3d 634 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654
  (July 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22

Wu v. City of New York,  934 F. Supp. 581 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Zahrey v. Coffey, 221F.3d 342 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28

## PRELIMINARY STATEMENT

Plaintiff  Joshua Marshall respectfully submits this Memorandum of Law in opposition to defendants' motion for summary judgment. Defendants' entire motion is based on an erroneous premise, namely, that plaintiff's own sworn testimony is not "evidence", and that therefore, plaintiff must come forward with additional "independent evidence" in order to defeat summary judgment. As multiple courts have held, however, plaintiff's own testimony *is,* by itself, admissible evidence and as such, is sufficient to defeat summary judgment when such testimony directly contradicts defendants' version of events.

Once the above erroneous premise is removed, it is clear that defendants' motion for summary judgment must be denied. As defendants acknowledge, plaintiff  "presents a conflicting version of the facts of his arrest" (Def. Mem. at 10), and there is a "salient fact in dispute" as to whether or not it was plaintiff "who tossed the gun" (Id. at 7).  Indeed, the parties have given directly contradictory versions of the events which took place on May 15, 2008.   According to defendants, they observed plaintiff Joshua Marshall remove a gun from his waistband and then throw it into the street as they approached him. According to plaintiff, however, he did *not* have a gun on his possession, did *not* remove a gun from his waist, and did *not* throw any gun into the street at any time during his encounter with the police on May 15, 2008. Since the parties have given directly contradictory accounts about what took place on May 15, 2008 – and since the determination of probable cause depends on whose version of events is credited –  defendants' motion for summary judgment must be denied.

-1-

## STATEMENT OF FACTS

The parties have given directly contradictory testimony about the events which led up to plaintiff's arrest on May 15, 2008.  Therefore, it is necessary to set forth each party's version of events separately.

## Plaintiff's Version of Events

On May 15, 2008, plaintiff Joshua Marshall was not feeling well. See Deposition Transcript of Joshua Marshall ("Marshall Dep."), annexed to the Declaration of Jon L. Norinsberg ("Norinsberg Decl."), Ex. A, at 83.  Mr. Marshall had a cold, stomachache and headache (Id. at 86).  Thereafter, he left his apartment and went out to purchase some items at a grocery store on the corner. (Id.).  Specifically, he purchased Ginger Ale, soup, Vicks cough medicine, and Tylenol cold medicine at two different stores. (Id. at 93-4, 98-99). The first store was on Broadway and Park Place (Brooklyn), and the second store was on Locust Street and Broadway (Id. at 89).  While at the second store, Plaintiff met someone he knew from the neighborhood as "Sip." (Id.[1] at 96,105, 110.). Plaintiff waited until Sip finished his purchases and then the two men headed home together, toward Park Place. (Id. at 105)

When they reached Park Place, plaintiff made a right onto Park Place and Sip continued to walk down Broadway. (Id. at 106). As plaintiff began walking down Park Place, he heard Sip say "the police is coming." (Id. at 107). At that point, Sip changed directions and re-joined plaintiff as he was walking down Park Place. (Id. at 107). Thereafter, plaintiff observed an unmarked police vehicle driving down Park Place – which is a one-way street – in the wrong direction. (Id.). Plaintiff continued a walking down Park Place.  (Id.  109-110).

---

[1]The actual name of "Sip" is Demetrius Meade.

As the police vehicle approached the two men, plaintiff observed Sip go into his coat, pull out a hand gun and toss it away. (Id. at 110, 112). Thereafter, the police put both men against the wall.  (Id. at 110).  The officers then repeatedly asked the two men: "*Whose gun is it?*" "*Whose gun is it*?" (Id. at 120; see also id at 110, 122).  At no time on May 15, 2008 did plaintiff Joshua Marshall ever possess a gun or weapon of any kind. (Id. at 183-184).  *At no time on May 15, 2008 did plaintiff Joshua Marshall ever reach into his waist and throw a gun or weapon of any kind onto the street*. (Id.). The only items plaintiff had in his possession were two small bags containing the items that he had just purchased for his cold. (Id. at 102). Plaintiff was out of his apartment for only ten to fifteen minutes at the time that he was arrested.  (Id. at 93). Plaintiff, was thereafter arrested, and he spent over 4 months in jail before all charges against him were dismissed.  (Id. at 151-52).

**Defendants' Version of Events**

On May 15, 2008, at approximately 12:44 a.m., P.O. Burbridge observed Joshua Marshall walking on Broadway.   See Deposition Transcript of P.O. Michael Burbridge ("Burbridge Dep."), Norinsberg Decl., Ex. B., at 10, 80, 81. As soon as he saw Mr. Marshall, he told his fellow police officers  –  P.O. Randall and P.O. Fox – "I know that guy and I know he's been arrested for possessing a firearm before." (Burbridge Dep. at 12, 21).  P.O Burbridge knew about plaintiff's prior arrest because, at some point before May 15, 2008, he had looked up Marshall's arrest history and had learned that "large quantities of cocaine, marijuana and two firearms were recovered from the defendant's residence" –  which was something that "stood out in his memory."  (Id. at 13, 18, 24; Ex. M)[2]

_____

[2]While plaintiff vigorously disputes these claims, for purposes this motion, plaintiff includes this testimony from P.O. Burbridge, as it is relevant to his state of mind prior to the encounter, and supports the inference that he arrested plaintiff because of his prior arrest for a gun charge.

After observing Mr. Marshall, the police vehicle turned down a one way street – Park Place – in order to speak to Mr. Marshall. As the police vehicle approached Mr. Marshall, P.O. Burbridge asked to speak with Mr. Marshall. (Burbridge Dep. at 29-31). Immediately thereafter, Mr. Marshall took a step behind the person he was walking with – an individual named Demetrius Meade – and threw a gun into the street. P.O. Burbridge personally observed Mr. Marshall reach into his waistband, remove a gun and toss it away. (Id. at 35, 38, 41, 49-50, 56). P.O. Burbridge never took his eyes off Marshall and therefore, he cannot be mistaken about seeing Marshall toss away the gun. (Id. at 50). P.O. Randall likewise observed plaintiff remove a gun from his waist and toss it away. See Deposition Transcript of P.O. Salim Randall ("Randall Dep."), Norinsberg Decl., Ex. C, at 32, 83.

Neither officer ever asked "whose gun is it?" after stopping Mr. Marshall. (Burbridge Dep. at 43; Randall at Dep. 47-8). Neither officer ever heard any other officer on the scene ask "whose gun is it?" (Id.). Defendants did *not* observe Joshua Marshall carrying any grocery bags on him, as plaintiff has claimed. (Burbridge Dep. at 43).

**Defendants' False Statements To The District Attorney's Office And To The Grand Jury**

After plaintiff's arrest, P.O. Burbridge met with prosecutors from the Kings County District Attorne's Office (Burbridge Dep. at 72). P.O. Burbridge told prosecutors that he had observed Marshall reach inside his waistband and remove a gun (Id. at 73; Ex. L). P.O. Burbridge also told prosecutors that he had observed Marshall throw a gun away. (Id. at 74). Thereafter, P.O. Burbridge testified before the Grand Jury. (Id. at 75). P.O. Burbridge told the Grand Jury that he had observed Marshall remove a gun from his waistband. (Id. at 75; Norinsberg Decl., Ex. D, at 6). P.O. Burbridge also told the Grand Jury that he had observed Marshall throw the gun away (Id. at 75; Ex. D, at 6).

-4-

Similar to P.O. Burbridge, P.O. Randall also spoke with members of the Kings County District Attorney's Office. (Id. at 99). P.O. Randall told prosecutors that he, too, had personally observed Marshall remove the gun from his waist. (Id. at 99). P.O. Randall also told prosecutors that he had personally observed Marshall throw the gun away. (Id. at 99). P.O. Randall likewise told the Grand Jury that he personally saw Mr. Marshall remove the firearm from his waist and throw the gun away. (Id. at 97,98; Norinsberg Decl., Ex. E, at 11-12).

**The Lack of Any Fingerprint Evidence Connecting Plaintiff To The Gun.**

P.O. Randall *claims* that he asked for fingerprints to be lifted from the gun by the NYPD's Evidence Collection Team (id. at 64,65), as this would be standard procedure for *every* gun recovered by the NYPD. (Id. at 65). However, according to the NYPD complaint report prepared for Joshua Marshall, P.O. Randall did *not* make a request for fingerprints to be lifted from this gun. (Id. at 89; Norinsberg Decl., Ex. F). In fact, there is a specific box on this form for requesting fingerprints, and this box is checked "*no.*" (Id. at 88, 89). P.O. Randall cannot think of *any* reason why a fingerprint analysis was not lifted on this gun. (Id. at 89).

**Material Omissions in the Arrest Report**

After returning to the precinct, P.O. Randall prepared an arrest report. (Id. at 114-115; Norinsberg Decl., Ex. I). In this arrest report, there is a section entitled "Details." (Id. at 119,120). The purpose of the "Details" section is to provide specific information relating to the facts of the arrest. (Id. at 120). On the arrest report, P.O. Randall *never mentioned* the fact that he saw Mr. Marshall reach into his waistband and toss an object away (Id. at 120) – despite the fact that such details were "very important." (Id. at 121). There is "no particular reason" why P.O. Randall didn't mention these facts on the arrest report. (Id. at 120-21). In fact, according to another police report, P.O. Randall told an AUSA – who was investigating related gun enhancement charges – that the

"A/O (the arresting officer) *did not see the defendant in possession of above firearm.*" (Randall Dep. at 102, 103, Ex. J).

**P.O. Randall's Refusal To Provide A DNA Sample**

After plaintiff's arrest, the NYPD's Evidence Collection Team requested P.O. Randall to provide a DNA elimination sample. However, P.O. Randall refused to participate in any type of DNA comparison tests. (Randall Dep. at 90, 91, 93, 97, 119). Specifically, P.O. Randall refused to give a DNA elimination sample. (Id. at 93, 97, 119). See also NYPD Request for Laboratory Examination Report, Norinsberg Decl., Ex. G ("Investigating Officer refused to give a DNA elimination sample for comparison."). P.O. Randall also refused to give an elimination buccal swab. (Id. at 90-91). See also Evidence Collection Team Report, Norinsberg Decl., Ex. H, ("A/O refused elimination Buccal swab."). P.O. Randall claims that his cooperation with the Evidence Collection Team was "optional." (Id. 95). However, P.O. Randall never asked his supervisors for permission to not provide a DNA sample as requested by the Evidence Collection Team. (Id. at 95).

**Defendants' Prior and Subsequent Encounters With Plaintiff**

Prior to the his arrest in May 2008, plaintiff had been stopped multiple times by both P.O. Burbridge and P.O. Randall. (Marshall Dep. at 115, 116, 124, 127-130). In particular, P.O. Burbridge "made it his business to search me, harass me, [and] pull me over ...". (Id. at 130). According to plaintiff, "any time they saw me in a car they pulled me over, any time they saw me walking they pulled me over." (Id. at 116). Plaintiff was stopped so many times by these officers that defendants simply referred to him as "J.J." – representing the initials of his first two names (Joshua James). (Marshall Dep. at 116. In fact, P.O. Burbridge has *admitted* that he actually knew plaintiff by his full name – "Joshua Marshall" – prior to stopping him on May 15, 2008. (Burbridge Dep. at 24), despite claiming that he had never arrested or stopped Joshua Marshall at any time before

-6-

May 15, 2008 (Burbridge Dep. at 13).

On November 6, 2008, plaintiff had another encounter with the defendants – this time, with P.O. Randall alone.  (Marshall Dep. at 130, 131; Randall Dep. at 70).  During this incident, P.O. Randall made plaintiff's day a "living hell." (Marshall Dep. at 130).  Specifically, P.O. Randall "harassed me", "put me against the wall" and "banged my head." (Id. at 131).  Further, P.O. Randall pointed a gun at plaintiff and said "you are a fucking criminal," leading plaintiff to file a complaint with the Civilian Complaint Review Board.  See CCRB Complaint Form, Norinsberg Decl., Ex. K; Marshall Dep. at 131).

P.O. Randall has acknowledged that he "had words" with plaintiff during this subsequent encounter, and that "it wasn't a pleasant conversation." (Randall Dep. at 70, 71).  P.O Randall has claimed, however, that he cannot recall any other details about the incident.  (Id. at 73,74).  As a result of this encounter, an investigation was launched by the Civilian Complaint Review Board (Randall Dep. at 75; Norinsberg Decl., Ex. J), but no formal conclusions were ever reached due (allegedly) to the fact that the "victim [was] uncooperative]". (Id.)

*          *          *          *

## STANDARD  FOR SUMMARY JUDGMENT

A motion for summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law." Howard v. Schoberle, 907 F. Supp. 671, 676  (S.D.N.Y. 1995). In determining whether summary judgment is appropriate, "a court must resolve all ambiguities and draw all reasonable inferences against the moving party."  Funnye v. City of New York, No. 98 Civ 7731, 2001 U.S. Dist. LEXIS 3337, * 3 (S.D.N.Y. March 27, 2001).  "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Howard, 907 F. Supp.  at 677 (citing Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d  Cir. 1994)).  As a rule, "credibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury , not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). See also  United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (same). In deciding a summary judgment motion,  "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Brady v. Town of Colchester, 363 F.2d 205, 210 (2d Cir. 1988)(citing Binder v. Long Island Lighting Co. 933 F.2d 187, 191 (2d Cir. 1991)).  Summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc.,477 U.S. 242, 248 (1986).

-8-

## ARGUMENT

I. **SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FALSE ARREST CLAIM.**

    A. **The Parties Have Given Markedly Different Testimony About The Events Which Led Up To Plaintiff's Arrest.**

It is well-settled that "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Accord Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."); Wu v. City of New York, 934 F.Supp. 581, 588 (S.D.N.Y. 1996) ("Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury."); Parkin v. Cornell University, 78 N.Y.2d 523, 529 (1991) (probable cause can be decided by the court "only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts").

In this case, there is a sharp factual dispute between the parties as to the events which took place on May 15, 2008.  According to defendants, they observed plaintiff removing a gun from his waistband and tossing it into the street.  (Burbridge Dep. at 35, 38, 41, 49-50, 56;  Randall Dep. at 32, 83 ).  According to plaintiff, however, he did *not* have a gun on his possession, nor did he throw any gun into the street, at any time during his encounter with the police on May 15, 2008. (Marshall Dep. at 183-84). Thus, the parties have given markedly different testimony about the events which led up to plaintiff's arrest.[3]  Under such circumstances, summary judgment must be denied.  See

---

[3]Defendants acknowledge that plaintiff  "presents a conflicting version of the facts of his arrest" (Def. Mem. at 10), and there is a "salient fact in dispute" as to whether or not it was plaintiff "who tossed the gun" (id. at 7), yet they still insist that there are *no* material factual disputes in this case.

Murphy, at 118 F.3d 947  (Where "the events were sharply disputed, the issue of probable cause was properly put to the jury, and the decision as to whose version to credit was entirely within the province of the jury."); Weyant, 101 F.3d at 854 ("The district court was not entitled, on a motion for summary judgment, to credit [defendants'] version of the facts and enter judgment based on his own view that their version was more likely true").  See also Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654 *11 (July 27, 2007) ("[plaintiff] asserts that he was never in possession of marijuana on May 24, 2004. Because the existence of probable cause turns on disputed issues of fact, the issue of probable cause is not amenable to disposition by summary judgment."); Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577, * 11 (E.D.N.Y. Sept. 27, 2005) ("At this stage, [plaintiff] is entitled both to have his testimony believed and to have all reasonable inferences that can be drawn therefrom made in his favor.  And if UC # 7404 either fabricated a drug sale or knowingly made a false identification of [plaintiff] as a seller, causing his arrest, then [plaintiff] has a false arrest claim against her"); Taylor v. City of New York, 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, at * 4 (S.D.N.Y. June 21, 2006) ("if the Court accepts plaintiff's version of events, plaintiff ... possessed no drugs [and therefore] the arrest was not justified").

In their moving papers, however,  defendants have wholly failed to address  – much less acknowledge – the sharp factual disputes which exist in this case.  Rather, defendants have presented only *defendants'* version of events, and have asked the Court to simply accept this account as true, without considering any of plaintiff's testimony. See, e.g., Def. Mem. at 2 (arguing that "there was probable cause to arrest and prosecute plaintiff" because "three police officers observed him discarding a loaded handgun ..."– despite the fact that plaintiff's testimony directly contradicts this

-10-

claim) (Marshall Dep. at 183-84). This same tactic was tried, and rejected, in <u>Funnye v. City of New York</u>,  No. 98 Civ. 7731, 2001 U.S. Dist. LEXIS 3337 *16 (S.D.N.Y. March 27, 2001).  As the court in <u>Funnye</u> explained, in language which is equally  applicable here:

> The flaw in the City defendants' argument, however, is that it requires the Court to accept the accounts of the events on the day in question as given by defendants...But those accounts are disputed by plaintiff and contain various internal conflicts.  Moreover, defendants's accounts lack any corroboration.  There are plainly issues of fact as to whether there was probable cause to arrest the plaintiff and those issues cannot be resolved on this motion for summary judgment.

<u>Funnye</u>, 2001 U.S. Dist. Lexis 3337, at * 16.

This is especially so where, as here, defendants have *conceded* that they did *not* have probable cause to stop Mr. Marshall prior to P.O Burbridge's statement that "I know that guy and *I know he's been arrested for possessing a firearm before*." (Burbridge Dep. at 12; Randall Dep. at 43).   As P.O. Randall testified:

> Q:	Prior to Officer Burbridge's statement, do you believe you had probable cause to stop Mr. Marshall?
> A:	*No*.
> Q:	Why not?
> A:	*We didn't have probable cause*.
> Q:	Prior to Officer Burbridge's statements, why did you not have  probable cause to stop Mr. Marshall?
> A:	Because up until that point *he hadn't made any furtive movements or done anything suspicious*.

(Randall Dep. at 43).

In other words, it was only *after* the defendant officers learned that plaintiff had been arrested before for gun possession that defendants (allegedly) observed Mr. Marshall engage in suspicious behavior and toss a gun away. (<u>id.</u>).  <u>See also</u> Burbridge Dep. at  66-7.  (Q: Did you observe any

-11-

furtive movements by Joshua Marshall *before* you decided to stop him? A: *No*.),  Based on the above testimony, a jury could certainly conclude  –  accepting Mr. Marshall's testimony  as true – that the officers  simply *presumed* that the gun belonged to him, based on his prior gun arrest, and did *not* actually see him in possession of a gun. Since the parties here  have given sharply conflicting testimony on whether or not plaintiff tossed away a gun on May 15, 2008 – and since the resolution of this dispute requires credibility determinations – there are material factual disputes which preclude summary judgment on plaintiff's false arrest claim. Accordingly, defendants' motion for summary judgment must be denied.

## II.   SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM.

### A.   There Is A Material Factual Dispute As To Whether Or Not Defendants Testified Falsely Before The Grand Jury.

Defendants  argue that the presumption created by the Grand Jury indictment defeats plaintiff's  malicious prosecution claim (Def. Mem. at 9). However, if plaintiff's testimony is accepted as true  – which  it *must* be for purposes of  this motion – then a jury could conclude that defendants lied to the Grand Jury when they testified about observing plaintiff toss away a gun.  See Sutton v. Duguid, No. 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853, *34-35 (E.D.N.Y. May 16, 2007) ("if plaintiff's version of the events is taken as true – that is that [defendant] did not announce himself as an officer, but told the grand jury that he did – a jury could reasonably conclude that the indictment was secured through bad faith or perjury ... thus there is a disputed issue of fact regarding whether false testimony was given to the grand jury, such that summary judgment is unwarranted."); Taylor v. City of New York, 269 F. Supp 2d 68, 74 (E.D.N.Y 2003) ("If the trier of fact were to credit plaintiff's version of events, he or she could find that the police witnesses had perjured

-12-

themselves or otherwise testified untruthfully before the grand jury."); Brome v. City of New York,

No. 02 Civ. 7184, 2004 U.S. Dist. LEXIS 3943, * 18 (S.D.N.Y. Mar. 15, 2004) ("[B]ecause a

question fact exists as to [the defendant's] account of the events leading up to plaintiff's [drug] arrest

... plaintiff has created a triable issue of fact to rebut both the presumption of an independent

prosecutorial decision and the presumption arising from the indictment.").  Accordingly, defendants'

motion for summary judgment must  be denied.

**B.    Defendants' Claim That Plaintiff's Testimony Is Mere "Speculation" Is Utterly Specious.**

Defendants claim that "plaintiff is merely *speculating* that the officers were being untruthful

...." (Def. Mem. at 12)(original emphasis).  However, there is nothing speculative whatsoever about

plaintiff's claim.   The parties here have given *directly contradictory* testimony on a critical issue

in this case – namely, whether or not plaintiff had a gun on him – and therefore, one side *must* be

lying. There is no other possibility. In fact, defendants acknowledged this very point in their

respective depositions. (Burbridge Dep. at 51; Randall Dep. at 100).  As officer Randall testified:

| | | |
|---|---|---|
| Q: | Would you agree that only one of you could be telling the truth? | |
| A: | Yes. | |
| Q: | Would you agree if you're telling the truth, Mr. Marshall is lying? | |
| A: | Yes. | |
| Q: | Would you agree if Mr Marshall is telling the truth, you're lying. | |
| A: | Yes. | |

(Randall Dep. at 100).  See also Burbridge Dep. at 51 (agreeing to the  proposition that "one of you

is not telling the truth.").[4]

_____

[4]To the extent that defendants suggest that there is a *third* possibility – namely, that the officers may have been "mistake[n]" about their identification of Marshall (Def. Mem. at 7) – this claim is flatly refuted by defendants' actual testimony in this case. See, e.g., Burbridge Dep. at 50 (Q: Is there *any* chance that you are mistaken about seeing Joshua Marshall throw the gun?

-13-

Since the parties have given directly contradictory testimony regarding plaintiff's possession of a gun – and since only *one* side can be telling the truth – there is nothing "speculative" whatsoever about claiming that defendants lied to the district attorney's office and to the grand jury when they claimed that they observed plaintiff toss away a gun. See Stewart v. City of New York, No. 06 Civ. 15490, 2008 U.S. Dist. LEXIS 30632 , *24 (S.D.N.Y. April 8, 2008) ("if a jury chooses to credit [plaintiff] rather than [defendant], it could find that [defendant] lied when he told the district attorney's office and the grand jury that [plaintiff] acted as a lookout."). Accordingly, defendants' motion for summary judgment must be denied.

### C. Defendants' Claim That Plaintiff Must Provide "Independent Evidence" To Support His Claims Is Wrong As A Matter of Law.

Defendants further argue that plaintiff "must come forward with *independent evidence* that tends to prove plaintiff's version of the facts" in order to overcome the grand jury presumption. (Def. Mem. at 11) (emphasis).  However, this same argument has been expressly rejected by courts in this Circuit. See, e.g., Richardson v. City of New York, No. 02 CV 3651, 2006 U.S. Dist. LEXIS 69577, *11-12 (E.D.N.Y. 2006)("I respectfully disagree with the Magistrate Judge's reasoning that [plaintiff] needs independent evidence corroborating his testimony…[his] testimony is *itself admissible evidence*, and, as mentioned, he is entitled at this stage to an assumption that the jury will believe him.  That is *enough*.")(emphasis added); Taylor v. City of New York, 2006 U.S. Dist. LEXIS 41429, *13 (S.D.N.Y. June 19, 2006) (rejecting "defendants' claim that plaintiff's allegations of fabrication [of drug evidence] are unsupported", since  "defendants ask the court to make an assessment of credibility [and] such assessments are inappropriate on motion for summary

---

A: *No*); Randall Dep. at 48 ("there was no mystery" as to whose gun it was).

judgment"); 269 F. Supp 2d 68, 74 (E.D.N.Y 2003) ("Plaintiff's opposition to summary judgment is thus not 'unsupported conclusions that witnesses perjured themselves,' but rather direct evidence from his *own testimony* under oath at a deposition.")(emphasis supplied). Thus, defendants' "independent evidence" argument is simply wrong.

To the extent that defendants rely upon <u>Spencer v. Ellsworth</u>, No. 09 Civ. 3773,  2011 U.S. Dist. LEXIS 49984 (S.D.N.Y. May 9, 2011), to support their position, such reliance is wholly misplaced. *First*, as defendants acknowledged in their brief in <u>Spencer</u>, the plaintiff in that case "withdrew his false arrest claims after being presented with evidence that police officers had probable cause to arrest plaintiff based on, among other things, the complaint of the robbery victim and plaintiff's own admission that he assaulted the complaining victim during the incident." (Spencer Def. Mem. at 2). *Second*, as defendants noted in their brief in <u>Spencer</u>, "Plaintiff's friend (and accomplice in the robbery) stated in a videotaped statement/interview that *he, too, observed the gun drop from plaintiff's shorts* as plaintiff was being led inside the precinct. Plaintiff himself admits that a black gun fell to the floor ... " (<u>id</u>. at 2)(emphasis supplied).

In direct contrast to the plaintiff in <u>Spencer</u>, plaintiff here has *not* withdrawn his false arrest claim, has *not* admitted participating in any other criminal offense, and has *not* had his story contradicted by a third party (non-party) witness. Thus, the instant case is easily distinguishable from <u>Spencer</u>.  Moreover, while the plaintiff in Spencer had *no* explanation for how the gun dropped to the floor, plaintiff here has offered a very clear explanation for where the gun came from: he *saw* Demetrius Meade remove the gun from his jacket and throw it into to the street. <u>See</u> Marshall Dep. at 110 ("At that given moment [Meade] went in his coat, puled out the gun and threw it ...."; at 112 ("I *saw* him go from his, went in his coat, pulled it out ....")(emphasis supplied). Thus, unlike the

-15-

plaintiff in Spencer – who was "without any explanation as to how [the gun] got there" (Spencer Def. Mem. at 9) – plaintiff here has, in fact, offered a concrete explanation for how the gun got into the street.  Accordingly, defendants' reliance on Spencer is wholly misplaced.

Apart from Spencer, none of the other cases cited by defendants support their claim that there is now an "independent evidence" requirement in the Second Circuit.  To the contrary, these cases merely stand for the (unremarkable) proposition that when there is *no* dispute as to the events leading up to an arrest – but rather, merely the officers' *interpretation* of those events – this is not a sufficient basis for defeating summary judgment.  See, e.g., Montes v. King No. 00 Civ 4707, 2002 U.S. Dist. LEXIS 14464, *9 (S.D.N.Y. August 5, 2002) ("Montes *confirmed* his participation in an illegal narcotics transaction…[e]ven if a jury were to credit Montes's assertion that he was merely the buyer and not the seller, [] actual guilt or innocence is irrelevant to the determination of probable cause.")(emphasis supplied).

Thus – notwithstanding defendants' claims to the contrary –  there is simply *no* requirement that plaintiff come forward with "independent evidence" to defeat summary judgment.  To the contrary, courts in this circuit have repeatedly held that plaintiff's deposition testimony – by itself – *is* sufficient to create a triable issue of fact regarding a claim of manufactured evidence.  See, e.g., Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (plaintiff's testimony that officers manufactured statement against him sufficient to defeat summary judgment on malicious prosecution claim); Taylor v. City of New York, 260 F. Supp. 68, 74 (E.D.N.Y. 2003) (plaintiff's deposition testimony that officers manufactured drug evidence against him "is direct evidence from his own testimony under oath at deposition", and is sufficient to defeat summary judgment on malicious prosecution claim); Chimurenga v. City of New York, 45 F. Supp. 2d 337 (S.D.N.Y. 1999)

-16-

(plaintiff's testimony that corrections officers "planted" razor blade inside of his book box is sufficient to defeat summary judgment on malicious prosecution claim). Thus, plaintiff's testimony in this case – which directly contradicts that of the defendants – is, in fact, sufficient to raise a triable issue of fact as to whether defendants falsely accused him of tossing away a gun. Accordingly, defendants' motion for summary judgment must be denied.

### D.   Defendant's False Statements to the District Attorney's Office Provide A Separate Basis For Plaintiff's Malicious Prosecution Claim.

Defendants argue that plaintiff's *only* means for overcoming the grand jury presumption is to show that defendant officers falsely testified before the grand jury. See Def. Mem. at 10 ("plaintiff must establish both what occurred in the grand jury" and that such misconduct "erod[ed] the integrity of the grand jury process ...."). However, it is well-established that "[w]here the defendant is a police officer ... the plaintiff's avenue for rebuttal is *not* limited to proof of misconduct in the grand jury alone. Rather, the plaintiff may [also] show that the officer misrepresented the fact to the District Attorney or otherwise acted in bad faith in a way that led to the indictment." Manganiello v. Agostini, No. 07 Civ. 3644, 2008 U.S. Dist. LEXIS 99181, *15 (S.D.N.Y. Dec. 9, 2008 ) (emphasis supplied).

In this case, apart from testifying falsely before the Grand Jury, defendants *also* passed along false evidence to prosecutors in the Kings County District Attorney's Office by telling them that they had observed plaintiff remove the gun from his waistband and throw it into the street. (Burbridge Dep. at 72-74; Randall Dep. at 99), Ex. L. The act of forwarding such false evidence to prosecutors is – by itself – sufficient to defeat defendants' motion for summary judgment on plaintiff's malicious prosecution claim. See Richardson v. City of New York, No. 02 CV 3651, 2006 U.S. Dist. LEXIS 69577, at *11 ("It is undisputed that defendants passed that [allegedly fabricated] evidence along to

the Queens County District Attorney's office, and that as a result [plaintiff] was indicted and prosecuted.  Those facts make out a malicious prosecution claim ...."); Lierando-Phipps v. City of New York, 390 F. Supp. 372, 383 (S.D.N.Y. 2005) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.");  Chimurenga v. City of New York, 45 F. Supp.2d 337, 343 (S.D.N.Y. 1999)("[w]here a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution.").

Since it is undisputed that defendants told prosecutors that they observed plaintiff toss away a gun – and since a jury could reasonably conclude that this claim was *false* and intended to mislead the prosecutor, defendants can be held liable for malicious prosecution based on their false statements to the prosecutors. See  Manganiello, 2008 U.S. Dist. LEXIS 99181 at *15 ( "the plaintiff's avenue for rebuttal is *not* limited to proof of misconduct in the grand jury alone.  Rather, the plaintiff may [also] show that the officer misrepresented the fact to the District Attorney")(emphasis supplied); Rueda v. Kreth, No. 01 Civ. 2819, 2005 U.S. Dist. LEXIS 4404, *24 (E.D.N.Y. Feb 7, 2005) (denying summary judgment on malicious prosecution claim where a " jury could reasonably believe that [defendant's] affidavit, in which he swore that the package was concealed under a bed, was false and intended to mislead a prosecutor.") Accordingly, defendants' motion for summary judgment must be denied.

### E.    There is Additional Evidence of  "Bad Faith"  In The Record Which Is Sufficient To Defeat Summary Judgment.

The Second Circuit has held that the Grand Jury presumption may also be overcome by showing "various wrongful acts on the part of the police" which establish "bad faith" on the part of

the defendant officers.   See McClellan v. Smith, 2006 U.S. App. Lexis 4531 at *20 (2d Cir. Feb.

24, 2006) .  In this case, the there is sufficient evidence in the record for a jury to find "bad faith" on

the part of defendants Randall and Salim to overcome the grand jury presumption.  Specifically, the

following facts to support this finding: i) prior to his arrest on May 15, 2008,  plaintiff had been

stopped multiple times by both P.O. Burbridge and P.O. Randall. (Marshall Dep. at 115, 116, 124,

127-130).  In particular,  P.O. Burbridge had "made it his business to search me, harass me, [and]

pull me over ..." numerous times.   (Id. at 130); and ii) in a subsequent incident, P.O. Randall

"harassed me", "put me against the wall" and "banged my head" (Id. at 131), pointed a gun at

plaintiff's head and said "you are a fucking criminal" –  leading plaintiff to file a complaint with the

Civilian Complaint Review Board.  See CCRB Complaint Form, Norinsberg Decl., Ex. K; Marshall

Dep. at 131).[9]

      While the second encounter occurred after plaintiff's arrest and indictment, it is nonetheless

probative of defendant's state of mind *all along* toward plaintiff.  See Manganiello v. City of New

York, 612 F.3d 149, 164 (2d Cir. 2010) ("Although that statement was made after the initiation of

the criminal proceeding, the jury was entitled, especially in light of the other evidence as to

[defendant's] conduct of the investigation, to view the misrepresentation as indicative of

[defendant's] state of mind all along."). Moreover, a jury could conclude from this latter encounter

that P.O. Randall held an animus against plaintiff, and that such an animus played a role in his

pursuit of criminal charges against plaintiff in the prior incident. See McClellan, 439 F.3d at 146

(jury could conclude that defendant's "prosecution of the case was impelled solely by a personal

---

[9]P.O. Randall has acknowledged that he "had words" with plaintiff during this encounter,
and that "it wasn't a pleasant conversation." (Randall Dep. at 70, 71).

-19-

animus" toward plaintiff). Accordingly, defendants' motion for summary judgment must be denied on this ground as well.

## III.  SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FAIR TRIAL CLAIM.

### A.  Forwarding False Evidence To Prosecutors Violates The Accused's Right To A Fair Trial And Is Independently Actionable Under 42 U.S.C. § 1983.

The Second Circuit has repeatedly held that when a police officer supplies false information to a prosecutor, the officer has violated the criminal defendant's right to a fair trial, and such unlawful conduct gives rise to an action under 42 U.S.C. § 1983.  See  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123,130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (quoting Ricciuti and clarifying that this is true even where officers have probable cause to arrest); Zahrey v. Coffey, 221F.3d 342, 355 (2d Cir. 2000)("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer").

Following the lead of the Second Circuit, many district courts have now expressly recognized "fair trial" claims under 42 U.S.C. § 1983.  See, e.g., Taylor v. City of New York, No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, * 14 (S.D.N.Y. June 19, 2006) ("when an officer gives false information about an arrestee to prosecutors, he violates the arrestee's right to a fair trial."); Henry v. City of New York, No.02 Civ.4824, 2003 U.S. Dist. LEXIS 15699, at * 12 (S.D.N.Y. September 5, 2003) ( "while there is no constitutional right to be free from having evidence

fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication.").

### B.      The Fair Trial Claim is Not Duplicative of the Malicious Prosecution Claim

Courts have also expressly rejected arguments identical to those made by defendants in this case, recognizing that a fair trial claim is *wholly independent* from a malicious prosecution claim. See, e.g., Nibbs v. City of New York, No. Civ. 3799, 2011 U.S. Dist. LEXIS 87213, *3-4 (S.D.N.Y. Aug. 4, 2011); Brandon v. City of New York, 705 F.Supp.2d 261, 266-67 (S.D.N.Y. 2010).  In Nibbs, defendants argued – as they do here – that the fair trial claim must be dismissed "because [it is] founded on the same conduct that give[s] rise to plaintiff's false arrest and malicious prosecution claim[]."  (Def. Mem. at 13-14)  However, the Court in Nibbs flatly rejected this argument:

> Defendants contend that because [plaintiff's] Fair Trial Claim stems from the same set of facts alleged in support of [plaintiff's] False Arrest Claim and Malicious Prosecution Claim, it must be dismissed as duplicative.  The Court disagrees. Pursuant to § 1983 and prevailing case law, denial of a right to a fair trial is a separate and distinct cause of action.  Indeed, the United States Court of Appeals for the Second Circuit has recognized a distinct cause of action predicated on precisely the same set of facts as those alleged here. ...  By allowing the plaintiffs in Ricciuti to bring their fair trial claim in addition to a claim for malicious prosecution, the Second Circuit established that the two types of claims may co-exist in a single action.

Nibbs v. City of New York, No. Civ. 3799, 2011 U.S. Dist. LEXIS 87213, *3-4 (S.D.N.Y. Aug. 4, 2011) (citing Riccuitti v. New York City Transity Authority, 124 F.3d 123 (2d Cir. 1997).

Numerous other courts have reached the same conclusion as the Court in Nibbs.  See, e.g., Baez v. Jet Blue Airways, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426, at * 35 (fn. 18) (E.D.N.Y. July 29, 2009)("district courts within the Second Circuit have treated fair trial and malicious

prosecution as separate claims for purposes of summary judgment or 12(b)(6) motions"); Jovanovic v. City New York, 04 Civ.8437, 2006 U.S.  Dist. LEXIS 59165, * 37 (S.D.N.Y. Aug. 2006) ("Plaintiff may legitimately bring both [a fair trial claim and a malicious prosecution claim]" based upon defendant's alleged fabrication of evidence). Thus, there can be no doubt that plaintiff's "fair trial" claim is *not* duplicative of his malicious prosecution claim under Section 1983.  Accordingly, defendants' motion for summary judgment on this claim must be denied.

**C.    There Is A Material  Factual Dispute As To Whether Or Not Defendants Fabricated Evidence Against Plaintiff.**

In this case, the parties have given directly conflicting testimony as to whether or not plaintiff tossed away a gun prior to his arrest. Such a conflict in testimony is, by itself, sufficient to raise a triable issue of fact as to whether or not defendants fabricated drug evidence against plaintiff.  See Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654 *40 (S.D.N.Y. July 27, 2007) ("[Plaintiff] alleges that the officers fabricated evidence in order to charge him with the drug possession ... While [plaintiff] chiefly relies on his own testimony to support allegations, 'credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgement.'") (citations omitted); Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577, * 11 (E.D.N.Y. Sept. 27, 2005) ( "Taking [plaintiff's] version of the facts as true, a jury could reasonably infer that UC # 7404 knowingly misidentified him and that [the arresting officer] fabricated the evidence that [plaintiff] was in possession of pre-recorded buy money.") Since there is a question of fact as to whether or not defendants fabricated evidence drug against plaintiff,  defendants' motion for summary judgment on plaintiff's fair trial claim must be denied. See Henry v. City of New York, No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699, * 11 (S.D.N.Y.  Sept. 5, 2003) 12 ("It is a question

of fact whether plaintiff's deprivation of liberty ... was caused by the fabrication of evidence").

## IV.   SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS ABUSE OF PROCESS CLAIM.

### A.   Defendants Misstate the Law Regarding "Collateral Objective."

In regard to the "collateral objective" prong, defendants misstate the law of this Circuit. There simply is no requirement that a plaintiff allege "extortion, blackmail or retribution," nor is "personal animus" required.  (Def. Mem. at 14). To the contrary, courts have recognized a wide variety other motives –  having nothing to do with anger or retribution – as sufficient for purposes of establishing a "collateral objective." See, e.g., Hernandez v. City of New York, No. 01 Civ. 4376, 2003 U.S. Dist. LEXIS 21146, at * 25 (S.D.N.Y. Nov. 18, 2003) (fear of losing job); Granito v. Tiska, 181 F. Supp 2d. 106, 118 (N.D.N.Y. 2001) (intimidating and embarrassing plaintiff); Brawer v. Carter, 937 F. Supp. 1071, 1082 (S.D.N.Y. 1996) (currying favor with plaintiff's ex-wife).

In this case, plaintiff has submitted evidence that defendants arrested him *not* because they actually observed toss away the gun, but rather, because: i) they had history of personal animus toward him, as evidenced by their multiple, unwarranted stops and searches of plaintiff prior to this arrest  (Marshall Dep. at 115, 116, 124, 127-130); ii) they knew that plaintiff had been arrested before for gun-related charges –  which they used  as a basis for stopping plaintiff *without probable cause*  (Burbridge Dep. at 12, Randall Dep. at 43);  and iii) they did *not actually see* who tossed the gun away but falsely claimed that they saw Marshall with the gun in order to avoid the embarrassment of admitting that they did not know *who* to arrest.  See Marshall Dep. at  120; (officers repeatedly asked "whose gun is it?" after making the stop). Under the law of this Circuit, such facts are sufficient for purposes of establishing a "collateral objective." See Richardson v. City of New York, No.  02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577, *22 (E.D.N.Y. Sept. 27, 2006)

("The 'collateral purpose' [plaintiff] claims is that the defendants wished to avoid the embarrassment of letting the real drug dealer go free. The question of whether the defendants, assuming they fabricated testimony and/or evidence against [plaintiff], did so to protect their own reputations or instead because they believed Richardson actually to be a drug dealer, will be submitted to the jury."). See also Hernandez, supra; Brawer, supra. Accordingly, summary judgment on plaintiff's malicious abuse of process claim must be denied.

### B. The Factual Dispute Over Fabricated Evidence Precludes Summary Judgment.

The  same factual issues which preclude summary judgment on plaintiff's false arrest, malicious prosecution and fair trial claims – namely, whether or not defendants  fabricated evidence by falsely claiming to have observed plaintiff toss away a gun – likewise preclude summary judgment on his malicious abuse of process claim. See Henry v. City of New York, No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699, * 11 (S.D.N.Y.  Sept. 8, 2003) ( "The factual dispute regarding the planting of evidence precludes granting summary judgment on the malicious abuse of process claim"); Hernandez v. City of New York, No. 01 Civ. 4376, 2003 U.S. Dist. LEXIS 21146, * 25 (S.D.N.Y. Nov. 18, 2003)  (denying summary judgment on the malicious abuse of process claim because "[a]  reasonable jury could believe [plaintiff's] account ... and find that [defendant] fabricated the assault incident").  Accordingly,  plaintiff's malicious abuse of process claim must be  allowed to go to the jury.

## V. THE QUALIFIED IMMUNITY DEFENSE IS NOT AVAILABLE TO DEFENDANTS.

### A. Disputed Issues of Fact Preclude Summary Judgment on Qualified Immunity

Defendants also argue that the officers are entitled to summary judgment on the grounds

of qualified immunity. (Def. Mem. at 8-9)  It is well-established, however, that the qualified

immunity defense is available on summary judgment only in those cases where the facts

concerning the availability of the defense are undisputed; otherwise, jury consideration is

normally required.  Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994).  Indeed, the Second

Circuit has repeatedly denied qualified immunity where, as here, there are clear factual issues in

dispute.  See, e.g., McClellan v. Smith, 2006 U.S. App. LEXIS 4531 at *31 (2d Cir. Feb. 24,

2006)("The District Court generally failed to heed the rule that resolution of genuine factual

issues is inappropriate on motions of summary judgment based on qualified immunity."); Curry

v. City of Syracuse, 316 F.23d 324, 334-35 (2d Cir. 2003) (reversing summary judgment on

qualified immunity grounds "because summary judgment based either on the merits or on

qualified immunity requires that no dispute about material factual issues remain"); Mickle v.

Morin, 297 F.3d 114, 122 (2d Cir. 2002)("Where the circumstances are in dispute, and

contrasting accounts present factual issues as to the degree of force actually employed and  its

reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of

qualified immunity"); Lennon v. Miller, 66 F.3d 416, 420 (2d  Cir. 1995) ("disputes over

reasonableness are usually fact questions for juries").  See also Lee v. City of New York, No. 00

Civ. 3181 2002 U.S. Dist. Lexis 13696 *23-24 (E.D.N.Y. July 22, 2002) ("if determining the

objective reasonableness of the police officers' conduct requires further fact finding, it is

appropriate to submit the issue of qualified immunity to the jury.")  Since the parties have given

markedly different versions of the events leading up to plaintiff's arrest, defendants are not

entitled to qualified immunity.

**B.   The Qualified Immunity Defense is not Available For Officers Who Knowingly Violate the Law.**

Under plaintiff's version of the facts – which must be accepted as true for purposes of this motion – defendants fabricated evidence against him and perjured themselves in front of the Grand Jury by falsely claiming that they observed plaintiff toss away a gun.  These allegations are reason enough to deny qualified immunity.  See, e.g., Sutton, 2007 U.S. Dist. LEXIS 35853 at * 38 ("[T]he Court must deny defendants' motion based on qualified immunity because, if plaintiff proves that Detective Duguid knowingly gave false testimony to the Grand Jury to secure the indictment, qualified immunity would not be available."); Babi-Ali v. City of New York, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified immunity does not protect those who knowingly violate the law.  Plaintiff has alleged knowing falsification and perjury.  Accepting such allegations as true requires this Court to find that the defense of qualified immunity will not protect [defendant] from liability.") (internal citations omitted).

To the extent that defendants now suggest that the officers may simply have been *mistaken* about their observations – see e.g. Def. Mem at 7 ("an equally plausible inference therefore is that the defendant officers made a mistake of fact in identifying plaintiff as the one how tossed the gun ...") – this argument is flatly refuted by the officers' own deposition testimony:

> Q:   So you had your eyes on him the entire time, correct?
> A:   That's correct.
> Q:   Is there *any* chance that you are *mistaken* about seeing
>       Joshua Marshall throw the gun?
> A:   *No.*

(Burbridge Dep. at 50);

P.O. Randall was likewise unequivocal in his testimony that he *personally observed*

plaintiff reach into his pants and throw away the gun.  See Randall Dep. at 32 ("I saw him reach

into his pants, pull out an object and throw it into the street."); id at 83 ("I know he pulled the

gun out of his pants.");  id. at 48 ("there was no mystery").  Thus, defendants' suggestion that

"defendant officers [possibly] made a mistake of fact in identifying plaintiff ...." (Def. Mem. at 7)

– and that therefore, they did not *knowingly* provide false testimony –  is utterly belied by the

record in this case.

Moreover, even if plaintiff's arrest were lawful (which it was not), plaintiff's allegation as

to fabricated evidence against defendants Randall and Burbridge is, by itself,  sufficient to

preclude summary judgment on the basis of qualified  immunity:

> Each of the defendants insists that so long as there was
> probable cause for [plaintiff's] arrest – independent of the
> allegedly fabricated evidence – the fabrication of evidence is
> legally irrelevant. In essence, they argue that as long as the
> arrest complied with the Fourth Amendment, the [plaintiffs]
> can have no claim for post-arrest fabrication of evidence
> against them. This argument – an ill-conceived attempt to
> erect a legal barricade to shield police officials from liability
> – is built on the most fragile of foundations; it is based on an
> incorrect analysis of the law and at the same time betrays a
> grave misunderstanding of those responsibilities which the
> police must have toward the citizenry in an open and free
> society.  No arrest, no matter how lawful or objectively
> reasonable, gives an arresting officer or his fellow officers
> license to deliberately manufacture false evidence against an
> arrestee.

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129-30 (2d Cir. 1997) (reversing district court

grant of summary judgment on qualified immunity grounds);  see also Henry v. City of New

York, 2003 U.S. Dist. LEXIS 15699, *12 (S.D.N.Y. Sept. 5, 2003)("If plaintiff's deprivation of

liberty was the result of planted evidence, this was a clearly defined constitutional right at the

time of Plaintiff's arrest, and qualified immunity is not available to the officers"), citing Zahrey

-27-

v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000).

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that defendants' motion for summary judgment should be denied in its entirety, and that this Court should grant such other and further relief as it deems just and proper.

Dated:  New York, New York
       October 28 2011

Respectfully submitted,

_____/S/_____
Jon L. Norinsberg (norinsberg@aol.com)
Attorney for Plaintiff
225 Broadway Suite 2700
New York, N.Y. 10007
(212) 791-5396

-28-